# IN THE COURT OF APPEALS OF IOWA

No. 19-1446
Filed November 6, 2019

**IN THE INTEREST OF E.S.,**
**Minor Child,**

**M.S., Father,**
        Appellant,

**N.S., Mother,**
        Appellant.

_____

        Appeal from the Iowa District Court for Sioux County, Daniel P. Vakulskas,

District Associate Judge.

        A mother and a father separately appeal the termination of their parental

rights. **AFFIRMED ON BOTH APPEALS.**

        Kevin J. Huyser, Orange City, for appellant father.

        Timothy J. Kramer of Kramer Law, P.C., Sioux Center, for appellant mother.

        Thomas J. Miller, Attorney General, and Anna T. Stoeffler (until withdrawal)

and Mary A. Triick, Assistant Attorneys General, for appellee State.

        Jenny L. Winterfeld of Winterfeld Law, P.L.C., Sioux Center, attorney and

guardian ad litem for minor child.

        Considered by Tabor, P.J., Mullins, J., and Gamble, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**GAMBLE, Senior Judge.**

A mother and father separately appeal from the termination of their parental rights in their child, E.J.S. On appeal, both parents challenge the statutory grounds authorizing termination, whether termination is in the child's best interests, and the juvenile court's refusal to grant additional time to work toward reunification. The father also challenges the juvenile court's refusal to apply permissive factors to preclude termination. We affirm.

### I. Facts and Prior Proceedings

This is the second termination appeal involving this family before this court in less than two years. We previously affirmed the termination of both parents' parental rights to another child, E.S. *See In re E.S.*, No. 18-1114, 2018 WL 4923174, at *1 (Iowa Ct. App. Oct. 10, 2018). Both the present and prior action stem from the physical abuse of the mother's two oldest children, P. and B.[1] We recounted the following relevant facts and events in our previous opinion:

> On September 7, 2016, child protective services received allegations of physical abuse of P., then ten years old, who had a black right eye, a scratch from his left eye to his nose, bruising by both ears, a swollen jaw, circular bruises on his arms, and bruises on his thigh and chest. P.'s explanation for the injuries was inconsistent with the nature of his injuries. A medical expert who reviewed photographs taken of the child determined the injuries were inflicted.
> Family Safety, Risk, and Permanency (FSRP) services were implemented with the family in September 2016—when the investigation began. The unsanitary condition of the home when the children were still living with the parents was a concern to service providers.
> On December 9, 2016, E.S., P., and B. were [each] adjudicated [as a child in need of assistance] [(]CINA[)]. The underlying reasons included nine child-abuse assessments

---

[1] The appellant father in this action is not the father to either of the mother's two oldest children. The mother voluntarily terminated her parental rights to P. and B.

completed concerning these children spanning eight years, including a founded child-abuse report where P. was the victim of physical abuse with the perpetrator unidentified at the time. At the CINA adjudicatory hearing, both parents asserted P.'s injuries were self-inflicted. The mother wanted the department of human services (DHS) involved to try to determine why the child was acting out. B. also told authorities that P.'s injuries were self-inflicted.

P. and B. later reported the father physically abused both of them. On February 3, 2017, all three children were removed from the custody of the mother and father.

On February 17, 2017, criminal charges were filed against the mother and the father. Combined, they were charged with twenty-two counts of felony neglect of a dependent person and felony child endangerment causing bodily injury. . . .

*Id.* at *1–2.

E.J.S. was born in November 2017 and was immediately removed from his parents. He was briefly placed in foster care with his siblings but was placed with his paternal aunt a few weeks later.[2]

In April 2018, both parents pleaded guilty to four counts of child endangerment. *Id.* at *2. "The mother received a four-year suspended prison sentence." *Id.* "The father received a four-year prison sentence . . . ." *Id.* However, he successfully appealed his sentence[3] and was resentenced, again receiving a four-year prison sentence. He is again appealing his sentence in the criminal proceeding.

In June, the juvenile court terminated the parents' rights to E.S. Both appealed. In our opinion affirming termination of their parental rights, we noted neither parent had meaningfully addressed their part in the abuse of P. and B. *Id.*

---

[2] Due to supervision concerns at the aunt's home, E.J.S. was returned to the foster home with his siblings in June 2019.

[3] We omit the citation to the father's criminal appeal in an effort to preserve the child at issue's anonymity.

at *3. We also expressed concern the family home continued to present ongoing safety risks and a smell of dog urine and feces in the home. *Id.* Accordingly, we concluded E.S. could not "be returned to the care of the parents safely because they have not engaged in any meaningful services addressing the risks of physical abuse in the home." *Id.* at *4.

Since then, the father has continued with consistent therapy, but he will not specifically discuss his abuse of P. and B. The mother's participation has been less regimented; she attended two appointments in July 2019 but had received no therapy since March.

Both regularly attended visitations with E.J.S. on Sundays when the father was home from his job as an over-the-road trucker. During the week, the mother exercised visitation, and the father would be present via video call.

Sometimes visitation occurred in their home. Although the parents moved into a new residence, various case workers expressed concerns regarding the cleanliness of the home and noted a distinct animal odor as they had with the prior residence. Workers also expressed concern regarding safety hazards in the home, such as exposed stairs and accessible vaping supplies, but when brought to the mother's attention she became defensive and resistant to suggestions. Workers became aware unknown people were staying in the family home.

Because the parents failed to progress, the State filed a petition to terminate both parents' parental rights. Following a two-day hearing, the juvenile court terminated the their parental rights, pursuant to Iowa Code section 232.116(1)(d), (e), (h), and (*i*) (2019).

Both parents appealed.

**II. Scope and Standard of Review**

We review termination proceedings de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). "We give weight to the factual determinations of the juvenile court but we are not bound by them. Grounds for termination must be proven by clear and convincing evidence. Our primary concern is the best interests of the child." *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) (citations omitted).

We use a three-step process to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). First, we determine whether a ground for termination under section 232.116(1) has been established. *See id.* at 472–73. If a ground for termination has been established, then we consider "whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." *Id.* at 473 (citation omitted). Finally, we consider "whether any exceptions in section 232.116(3) apply to preclude termination of parental rights." *Id.* (quoting *In re M.W.*, 876 N.W.2d 212, 220 (Iowa 2016)).

**III. Analysis**

*A. Statutory Grounds*

We first address the parents' challenge to the statutory grounds authorizing termination. When, as here, the juvenile court terminates on multiple statutory grounds, we may affirm on any ground. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We choose to address grounds for termination under section 232.116(1)(h) with respect to both parents. Iowa Code section 232.116(1)(h) authorizes termination of a parent's parental rights when:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Both parents only challenge the fourth element, arguing E.J.S. could be returned to their care.

With respect to the father, we conclude E.J.S. cannot be returned to his care. The father contends because he continued with his therapy he meaningfully engaged in treatment, alleviating the risk of harm to E.J.S.[4] We cannot agree. The father continues to refuse to address his past physical abuse of P. and B. At the termination hearing, he cited his sentencing appeal in the criminal case as justification for refusing to specifically address the abuse. But because he continues to refuse to meaningfully address his physical abuse of children, his progress in this case is stagnant. He has not made any meaningful improvement since we decided *E.S.* Also, as in *E.S.*, the condition of the home remains concerning. The home continues to smell of urine and feces, and workers recently noted an uptick in urine stains during a recent visit. Accordingly, we find no reason to part from our reasoning in *E.S.* and conclude E.J.S. cannot be safely returned to the father. *See* 2018 WL 4923174, at *2–4.

With respect to the mother, we also conclude E.J.S. cannot be returned to her care. Like the father, the mother refuses to address the physical abuse of her

---

[4] To the extent the father argues he cannot be compelled to admit to abusing P. and B. in these proceedings under the Fifth Amendment, we previously addressed this argument in *E.S.*, 2018 WL 4923174, at *3–4.

two oldest children. Her participation in therapy has been inconsistent. More troubling, at the termination hearing, the mother testified she believes her oldest children were never abused by the father. Without this acknowledgment, she cannot progress. Like with the father, we find the mother has made no meaningful progress since we decided *E.S.*

We also have additional concerns regarding her protective capacity. She is unable to spot and remediate safety hazards in the home. The home continues to carry an odor of animal excrement. She permits people to come and go from the home. At the hearing, she requested E.J.S. be placed with the paternal grandparents in the event he could not be placed with her. She made this request knowing about concerns of sexual abuse in that home. Accordingly, we conclude E.J.S. cannot be safely returned to the mother.

*B. Best Interests*

Next, we consider the child's best interests. Both parents argue termination is not in E.J.S.'s best interests. In considering the best interests of a child, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *P.L.*, 778 N.W.2d at 40 (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41.

With respect to both parents, we find termination serves E.J.S.'s best interests. In doing so, we reject the parents' hollow arguments.[5] E.J.S. deserves to live in a home where he will be free from abuse. The parents cannot provide that. *Cf. J.E.*, 723 N.W.2d at 798 ("When making this decision, we look to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future." (quoting *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997))). Moreover, we note his current foster home has expressed a willingness to adopt him. *See* Iowa Code § 232.116(2)(b) (noting the juvenile court may consider a foster family's willingness to permanently integrate the children into the family). This would permit E.J.S. to grow up with his biological siblings also placed in the foster home. *See J.E.*, 723 N.W.2d at 800 (noting preference to keep siblings together). Because termination would free E.J.S. for adoption with his siblings and protect him from future harm, we conclude termination with respect to both parents is in E.J.S's best interests.

C. *Exceptions to Termination*

Next, we address the father's claim his bond with E.J.S. should preclude termination. The court may forgo termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). "[T]he parent resisting termination bears the burden to establish an exception to termination" under section 232.116(3). *A.S.*, 906 N.W.2d at 476. However, even

---

[5] The father contends he took responsibility for his past abuse by pleading guilty in the criminal case, and in the same breath he argues he cannot be forced to admit to abuse as a step toward reunification. The mother notes E.J.S. was never the target of the past abuse. Both parents note E.J.S.'s bond with his extended family.

if an exception to termination is established, we exercise our discretion, "based on the unique circumstances of each case and the best interests of the child," to determine whether the parent-child relationship should be saved. *Id.* (citation omitted).

We find the father overstates his bond with E.J.S. *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010) ("[O]ur consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the parent]'s inability to provide for [the child]'s developing needs."). E.J.S. was removed from the family at birth and has never been in the father's care. The father was largely absent from visitations. While he did participate in visitations while out of town for work via video calls, E.J.S. was too young to meaningfully interact with him through this medium. In short, any existing bond is not so great as to overcome the father's significant shortcomings.

*D. Additional Time*

Finally, we address both parents' argument they deserve additional time to work toward reunification. Iowa Code sections 232.104(2)(b) and 232.117(5) permit a court to defer permanency for six months so long as the need for removal would no longer exist at the end of the six-month period. However, to grant an extension of time, the juvenile court must be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal . . . will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b).

Neither parent provided any specific reason for the juvenile court to believe the need for removal would be eliminated in six months. Rather, these parents

have had ample time to address and correct their parenting deficiencies, yet they have failed to do so. DHS entered their lives before E.J.S. was even born. When reflecting on their cycle of denial and lack of meaningful therapeutic engagement, we see no end in sight. E.J.S. has never had a permanent home in his life, we will not defer that any longer in the hope these parents will become adequate in the future. *See D.W.*, 791 N.W. at 707 ("We do not 'gamble with the child[]'s future' by asking them to continuously wait for a stable biological parent, particularly at such tender ages." (citation omitted)).

**IV. Conclusion**

We affirm the termination of the mother and the father's parental rights to E.J.S.

**AFFIRMED ON BOTH APPEALS.**